JONES, Justice.
Mrs. Laree Davis Rouse, administratrix of the estate of her husband, Norman Will Rouse, sued appellant insurance company on a credit life insurance policy. She recovered judgment, and the company appeals. We reverse for a trial by jury.
On January 12, 1967, appellee’s, husband entered into a retail installment contract for the purchase of a 1967 Chrysler automobile. The time balance on the contract was $3,967.92 and was payable in thirty-six monthly installments of $110.22 each. The contract was duly signed by the husband, and he indicated thereon that he desired credit life insurance according to the terms and conditions set forth in the policy issued by appellant and a paragraph on the face of said contract titled: “NOTICE TO BUYER IF CREDIT LIFE INSURANCE IS AUTHORIZED.” The last sentence in the first paragraph of the said heading is: “Reference is hereby made to the further statement of such insurance * * * contained in Paragraph 10 on the *787 reverse hereof, * * * ” The said paragraph 10 on the reverse side of the contract was headed in capital letters, “CREDIT INSURANCE ON LIFE OF BUYER.” The first sentence of paragraph 10 reads:
If a charge for Credit Life Insurance appears in line 4b on the face of this contract, (which it did) and if the Buyer has designated on the face hereof that such insurance shall be provided under John Hancock Policy Nq. 17680-GCI, the Buyer shall be insured under that Policy, subject to the Declaration of Good Health on the face of this contracts, and in accordance with the terms and conditions of that Policy.
Under the paragraph on the face of said contract entitled, as aforesaid, “NOTICE TO BUYER IF CREDIT LIFE INSURANCE IS AUTHORIZED” there were three paragraphs. Paragraph 3 was numbered and headed in red ink as follows: “DECLARATION OF GOOD HEALTH.” said paragraph provided :
I, the Buyer proposed for life insurance, in order to induce John Hancock to effect such insurance, do hereby declare that to the best of my knowledge and belief I am now in good health. I hereby authorize any physician or hospital to disclose to John Hancock in the event of my death all information concerning my medical history prior to the date of this contract.
The circuit judge, after hearing the evidence, instructed the jury peremptorily to find for the appellee, and the case is appealed here by appellant, assigning as error: the court’s action in directing a verdict for the plaintiff; not submitting to the jury questions arising under the declaration of good health, and in not granting the defendant a new trial.
The evidence showed that in 1964 the insured, Norman Will Rouse, was engaged in business with a partner and during that year was subjected to surgery for the purpose of removing a blood clot from his brain.
About five months thereafter, the partnership was dissolved, and the said Rouse entered into a business of his own.
On January 12, 1967, he was receiving payments for some disability.
Rouse was ill during the year 1966, and on July 30, 1966, he went to a hospital where the doctors performed a biopsy on a portion of his lung. The biopsy disclosed a carcinoma of the right lung. At the same time, he was found to be suffering with high blood pressure. The biopsy disclosed, and the doctors found, that the said condition was inoperable and was in a terminal state.
The records show that they did not reveal to the insured the result of the biopsy. On November 18, 1966, he returned to the doctor complaining of pains in his chest, and it was found that there was an infection in his lung. It is shown in the record that he complained numerous times of pain in his chest. These events all occurred prior to January 12, 1967, when the contract was made.
On January 13, 1967, he had to return to the hospital where he remained until January 24, 1967. He was hospitalized because of severe pains in his chest which the doctor said were related to the cancer.
The doctor saw him at his home twice during the month of February, when he was given medicine for pain. Rouse returned to the hospital on March 5, 1967, and there died on March 13, 1967.
At the time the application was signed, the decedent had had a serious operation on his head in 1964; was drawing disability payments; had had an incision in his chest for the purpose of a biopsy; and had high blood pressure and pains in his chest. As heretofore stated, it was testified that the husband did not know he had cancer.
*788 Appellee relies upon the rule stated in 43 Am.Jur.2d Insurance section 781 page 763 (1969) which reads, in part, as follows:
ANSWERS STATED TO BE TRUE TO BEST KNOWLEDGE AND BELIEF, AND THE LIKE.
Where the answers as to health or physical condition are stated to be true to the best knowledge and belief of the applicant, or some equivalent expression is used, the cases hold, almost without exception, that an incorrect statement innocently made in the belief in its' truth will not avoid the policy, although there is also an agreement that any untrue or fraudulent statement will avoid the policy. (emphasis added).
In 45 C.J.S. Insurance § 595, page 404 (1946), the rule is stated as follows:
Questions calling for mere expressions of opinion or belief.
Where a question propounded to applicant from its very nature calls for matters of judgment opinion, or belief, an untrue statement made by insured in the application will not avoid the policy unless the misrepresentation was knowingly made with intent to deceive the company. The fact that insured committed error in answering a question calling for an expression of opinion does not constitute fraud in law. (emphasis added).
In New York Life Insurance Company v. Hansen, 71 N.D. 383, 2 N.W.2d 163 (1941), [as quoted from 29 Words and Phrases, supp., page 222] it is said:
Insured’s answer to question in application for reinstatement of life policy whether to the best of his knowledge and belief he was in the same condition of health as when the policy was issued was merely a matter of “opinion” and a wrong answer thereto would not vitiate agreement to reinstate, if the answer was made in good faith, and if there ivas no intentional misstatement, (emphasis added).
In Service Life Insurance Company v. McCullough, 234 Iowa 817, 13 N.W.2d 440, 444, 153 A.L.R. 697, 705 (1944), the court said:
The appellant when it asked the insured whether he was “in good health and free from disease”, certainly knew that any answer he might give would be only his opinion, conclusion, or best judgment in the matter. It knew, of course, that he could not warrant or conclusively certify that he was in good health and free from disease. It knew that an affirmative answer would not be a warranty, but would be nothing more than a representation that, insofar as he reasonably and in good faith knew, the answer was true, (emphasis added).
Attention is also called to the cases collected in the annotation in 153 A.L.R. 714-715 (1944), where the following is set forth:
In other cases, the question in an insurance application as to whether the applicant had any serious illness or disease has been construed to call merely for an expression of opinion on the part of the applicant; and in such case, the falsity of the insured’s answer will not vitiate the policy if made in good faith and without intent to deceive the insurer. Illinois Mason’ Benev. Soc. v. Winthrop (1877) 85 Ill. 537; Collins v. Catholic Order of Foresters (1909) 43 Ind.App. 549, 88 N.E. 87, (later appeals in (1912) 51 Ind.App. 285, 99 N.E. 745, and (1919) 74 Ind.App. 278, 122 N.E. 666); Service L. Ins. Co. v. McCullough (Iowa) (reported herewith) ante, 697; [234 Iowa 817, 13 N.W.2d 440, 153 A.L.R. 697] Hogle v. Guardian L. Ins. Co. (1868) [29 Super. 567] 4 ABB Pr NS (NY) 346; Higbee v. Guardian Mutual L. Ins. Co. (1873) 66 Barb (N.Y.) 462 (affirmed in (1873) 53 N.Y. 603); * * * (emphasis added).
*789 In Fidelity Mutual Life Insurance Company v. Miazza, 93 Miss. 18, 40, 46 So. 817, 819 (1908), it is stated:
If the applicant is not informed as to any question asked in the application, he should so state, and there can then be no misrepresentation.
In Coffey v. Standard Life Insurance Company of the South, et al., 238 Miss. 695, 705, 120 So.2d 143, 148 (1960), the Court had given a peremptory instruction for the insurance company on the certificate signed by the insured .in which he certified that to the best of his knowlege and belief that he was in good health, we quote from Coffey, wherein it was said:
But we think there was no error in the court’s action in granting the peremptory instruction requested by the appellant, [sic] [Peremptory instruction was for the insurance company. See page 696 of Coffey]. The untrue statements contained in the application of the insured, in our opinion, gave the insurance company the right to declare the certificate of insurance null and void at its option. It is undisputed that at the time the certificate of insurance was issued, the certificate holder, W. W. Coffey, Sr., was under the professional care of Dr. R. H. McArthur for the treatment of a throat cancer; that tissue from his throat had been removed for pathological examination; and that he had been admitted to the Baptist Hospital for x-ray therapy. It is true that Dr. R. H. McArthur stated in his letter of August 27, 1957, that, “At the request of his wife, because of the patient’s temperament, he was not advised that this lesion was definitely malignant until after completion of x-ray therapy to the nasopharynx at which time the lesion was definitely regressing rapidly.” But it is clear that Mr. Coffey was fully aware of his treatment by the physician, Dr. McArthur, during the eighteen days period immediately prior to the date of the certificate. He knew of the removal of tissue from his throat, his admission to the Baptist Hospital, and the x-ray therapy that was there administered to him, and it was his duty to make known, to the insurance company those facts when he signed the certificate upon the basis of which he was asking that the life insurance policy be issued. He knew that he was not in good health, free from all diseases or ailments. He knew that he had suffered from . ailments or illnesses during the three weeks immediately preceding the date of the execution of the above mentioned certificate, and that he had consulted and had been prescribed for and attended by Dr. McArthur during that period of time; and yet he mentioned none of these facts in the certificate which he executed as the basis for the granting of the life insurance covered by the above mentioned group life certificate. (emphasis added).
We think the lower court was in error in granting the peremptory instruction for the appellee in view of the fact that at the time the insured signed said certificate he knew: (1) that he had been operated on' for a blood clot in 1964; (2) that he was drawing disability compensation; (3) that he had had chest pains in the spring of 1966; (4) that he had been in the hospital on the last day of July 1966, where he had an operation; (5) he continued to' have chest pains; (6) that he had seen the doctor on November 18, 1966, less than two months before he signed the contract. The proof showed he reentered the hospital the next day where there, and at home, he lingered until his death, two months later.
The question is not whether or not he knew that he was afflicted with cancer. The question is whether he knew that his health was not good and whether in good faith, he should have disclosed these facts to the company at the time of the contract. The fact that he gave the opinion would not render the policy void, provided it was in good faith. However, if he was not in good health and he knew it because of those events that had occurred, and were *790 continuously occurring, then he should have, in good faith, disclosed these facts. Whether he knowingly concealed them from the company would be a question about which reasonable men could differ from the evidence produced. We think this issue should be decided by a jury.
The case is reversed and remanded for a new trial.
Reversed and remanded.
ETHRIDGE, C. J., and RODGERS, BRADY, and SMITH, TJ., concur.