MERCHANTS RESERVE LIFE INSURANCE COMPANY *v.* RICHARDSON.

[No. 9,912.  Filed February 5, 1918.]

1. APPEAL.—*Review.*—*Question of Fact.*—On an appeal from a judgment for plaintiff on a life insurance policy, the judgment cannot, regardless of the disposition of questions presented by appellant relating to breaches of warranties or representations, be affirmed on the ground that defendant, by unreasonable delay in tendering back premiums paid, waived any right to avoid the policy because of such breaches, where the issue of waiver was

one of fact and the reward does not affirmatively show that the verdict was based thereon, or that the undisputed evidence admits of but the single inference that after defendant learned the facts, or had sufficient notice to put it on inquiry concerning the facts upon which its rescission was based, it did not with reasonable promptness rescind and tender back the premiums received. p. 575.

2. INSURANCE.—*Life Insurance.—Action on Policy.—Answers to Interrogatories.—Scope.*—In an action on a life insurance policy, the jury's answer, "Yes, for dyspepsia," to a special interrogatory, "Did insured within five years before application consult any physician for any bodily ailment?" is not the equivalent to a finding that the answer, "None," to a question, in the application for life insurance, "Give name of any physician consulted in last five years," was false. p. 582.

3. APPEAL.—*Answers to Interrogatories.—Scope of Review.*—Although, in reviewing the ruling on a motion for judgment on the jury's answers to interrogatories, the court on appeal is confined to a consideration of the pleadings, the answers to the interrogatories and the general verdict, it will be assumed in favor of the general verdict that every supposable fact, properly provable under the issues, that would in any way tend to support it, was in fact proved. p. 583.

4. INSURANCE.—*Life Insurance.—Action on Policy.—Verdict.—Answers to Interrogatories.*—In an action against an insurance company on a life policy, the jury's answers to special interrogatories, even though showing a breach of the representation or warranty of insured that he had not in five years consulted a physician for any bodily ailment, are insufficient to overcome the general verdict for plaintiff in the absence of further answers showing an election by defendant to rescind, and an offer to place the insured in *statu quo* within a reasonable time after learning the facts concerning the misrepresentation upon which the forfeiture was claimed. p. 583.

5. INSURANCE.—*Life Insurance.—Action on Policy.—Verdict.—Answers to Interrogatories.*—In an action against an insurance company on a life policy, answers to interrogatories showing any breach of representation or warranty as to insured having other insurance are insufficient to overcome a general verdict for plaintiff, in the absence of a finding that the insurer made a seasonable offer to rescind and tender back premiums paid. p. 584.

6. INSURANCE.—*Life Insurance.—Application.—Representation.*—Where answers and declarations in an application for life insurance are merely representations, they need only be substantially true, so far as material to the risk, but when they are to be

construed as warranties they cannot be deviated from and must be strictly true. p. 585.

7. INSURANCE.—*Life Insurance.—Representations in Application.— Incorporation in Policy.*—The mere incorporation of an application for life insurance into the policy does not convert into warranties answers and declarations in the application which purport to be representations only, in the absence of language in the policy itself sufficient for that purpose. pp. 585, 587.

8. INSURANCE.—*Life Insurance.—Representations.—Warranties.—* A warranty is in the nature of a condition precedent and should be a part of a contract of insurance conditioned upon, so as to appear on the face of the policy itself, and any merely collateral instrument which was the inducement to, but no part of, such contract, even though its words clearly import a warranty of the answers or declarations made therein, will nevertheless be construed as representations only. p. 586.

9. INSURANCE.—*Life Insurance.—Action on Policy.—Representations in Application.—Good Health.—Evidence.*—Where a policy of life insurance was issued in July, 1912, and a surgical operation performed on insured in the following January disclosed a cancer of the stomach, which subsequently caused death, so far developed that its removal could not be attempted, evidence, in an action on the policy, showing that, although deceased had visited a physician and got medicine for indigestion probably twice in June and once or twice in July, 1912, and continued to be treated for the same ailment until the following December, dyspepsia is not regarded as a disease, but as a symptom only, that good health within the meaning of insurance risks is affected only by a disease or affliction which is acute or which will probably shorten life, that there was no diagnosis of cancer until after the operation, and that it was impossible to determine how long the cancer had been developing, was sufficient to warrant the finding that the insured's statement in his insurance application, which was made three days before the issuance of the policy, that he was in good health, was substantially true. p. 589.

10. INSURANCE.—*Life Insurance.—Application.—Declarations as to Health.—Knowledge of Medical Examiner.*—Insured's answer in an application for life insurance that he had not consulted any physician in five years is, at least so far as material, substantially true, where written down by the insurer's medical examiner, after the applicant had informed him that he had a short time before, obtained some medicine for dyspepsia from a doctor, and the examiner told him that "that did not amount to anything." p. 592.

11. INSURANCE.—*Life Insurance.—Application.—False Statements. —Other Insurance.*—Insured's answer in an application for life

insurance, such answer constituting a representation only, that he carried life insurance in another company, was, so far as material to the risk, substantially true and not fraudulently made, though the insurance named had, in fact, lapsed a few days before for nonpayment of dues. p. 592.

From Grant Circuit Court; *H. J. Paulus*, Judge.

Action by Florence A. Richardson against the Merchants Reserve Life Insurance Company. From a judgment for plaintiff, the defendant appeals. *Affirmed*.

*William J. Whinery* and *Meade S. Hays*, for appellant.

*Condo & Browne, James C. Blacklidge* and *Wolf & Barnes*, for appellee.

Hottel, J.—The undisputed facts, pertinent to the questions presented by this appeal, disclosed by the pleadings and the evidence, are in substance as follows:

On July 18, 1912, the Commonwealth Life Association, an Indiana corporation of Crawfordsville, Indiana, issued a policy of insurance to S. A. Richardson and Florence Richardson, husband and wife, by which, for the consideration therein named, it insured their lives jointly in the sum of $1,000, which sum, upon the death of either, it agreed to pay to the survivor, if living, otherwise to the executors, administrators, etc., within sixty days after receipt and approval of due and satisfactory proof of the interest of the claimant. Afterwards appellant proposed to assume all liabilities on said policy, which proposition was accepted by appellee, and a written certificate of such assumption was issued to appellee, which provides that appellant assumes *under and according to the terms and conditions thereof said policy*, etc.

Thereafter, to wit, on the — day of July, 1913, S. A. Richardson died, leaving the appellee surviving. The judgment from which this appeal is prosecuted is a judgment in appellee's favor for $1,083.16 in an action brought by her against appellant on said policy of insurance.

The complaint makes the policy and application, and appellant's written assumption of liability thereon respectively parts thereof by way of exhibit, and contains the usual averments showing performance on the part of deceased and of appellee of the conditions of the policy required of them, proof of notice of the death, etc., and appellant's neglect and failure to pay. Its sufficiency was not questioned.

The appellant filed an answer in three paragraphs, the first of which is a general denial. The second and third paragraphs respectively set up a special defense predicated on certain provisions of the policy and application.

These provisions are as follows (for convenience, we italicize the portions italicized by appellant in its brief):

Provisions of the policy:

"*In consideration of the statements contained in the written and printed application No. 1830, and the medical examination of this policy,* and the payment in advance of the sum of Twenty-one and 50/100 Dollars, *this insurance is hereby granted. The conditions, privileges, and benefits written and printed on the following pages form a part of this contract as fully as if recited over the signatures hereto affixed.*

"*The policy and application, a copy of which is hereto attached, hereby constitutes the entire contract* between the Association and the insured.

"This policy shall be *in full force only upon delivery to the insured, and upon condition that he be then in good health.*

"No agent shall have power in behalf of the Association to modify this contract in any way whatsoever."

Provisions of application (Part 1.):

"I, S. A. Richardson, hereby make application for membership and insurance in the Commonwealth Life Association of Crawfordsville, Indiana. My residence and P. O. address is * * * Greentown, State of Indiana. My age nearest birthday is 52 years. I apply for One Thousand Dollars of insurance. My occupation is minister. Do you carry life insurance? Yes. What companies and amount in each? Modern Woodmen, $1,000. Have you ever applied for life insurance without receiving the amount and kind applied for? If so, when and to what companies? No.

"I hereby declare and represent that I am in good health, * * * *and that all the statements and answers to the above questions are true.*

"I hereby agree * * * that the foregoing, together with this declaration, shall constitute the application and become a part of the contract for insurance hereby applied for. And it is agreed that the policy herein applied for shall be accepted subject to the privileges and conditions therein contained; and said policy shall not take effect until the same has been issued by the said Association and delivered to me during my life time, and while in good health."

Part 2 of the application consisted of questions and answers, among which were the following:

"7. Are you now in good health? Yes.

"9. Have you ever had any of the following complaints, diseases or symptoms? Dyspepsia or indigestion or any diseases of the stomach or abdominal organs. * * * Cancer or tumor or ulcers * * *?

"Of each illness, state date of attacks, severity, complications and results.

"Dyspepsia mild two months' duration, does not cause him any trouble at present. Has not taken but little medicine for same. Home remedies. O. L. S.

"10. Have you ever had any other illness, injury, surgical operation or constitutional disease? Give date, duration and effects. No.

"11. *Give name and address of any physician consulted in last five years?* None.

"12. When, and for what complaint? * * *

"I declare, on behalf of myself and of any person who shall have or claim any interest in any policy issued hereunder, each of the above answers to be full, complete and true, and that I am temperate, and in the best of my knowledge and belief in sound physical condition and proper subject for life insurance."

The sufficiency of none of said answers is questioned, and for the purposes of the questions presented by the appeal, we need only indicate their general scope and tenor. The averments of said second paragraph are to the effect that the policy sued on was issued to the deceased upon his written application therefor, and that in this application he made the representations above indicated relating to his health; that such representations were warranties; that when said policy was issued and delivered deceased was not in good health, as he well knew; that his said statements and warranties of good health were false in that he was at said time suffering from a disease of the stomach from which he afterwards died; that such statements and warranties were material to said risk, and that appellant was ignorant of the facts and relied on them, etc.

The third paragraph of the answer contains substantially all the averments of the second, and in addi-

tion avers that deceased at the time of his application was then suffering from a disease of the stomach known as carcinoma, or cancer of the stomach, from which disease he afterwards died. The other answers and representations contained in said application above indicated, made in response to the questions asking for the names of physicians consulted in the last five years, and whether he carried other life insurance, are set out in detail, together with averments of other facts showing the falsity of each of said answers. Each of these paragraphs contains the further averment "that immediately upon learning the aforesaid facts the defendant  *  *  *  notified  *  *  *  plaintiff that said policy was void and that it refused to be bound by the same and  *  *  *  offered to repay the plaintiff all the moneys received  *  *  *  as premiums  *  *  *  , but plaintiff  *  *  *  refused to accept such repayment; that thereupon defendant tendered to plaintiff  *  *  *  $38.60, being  *  *  *  all the moneys received  *  *  *  as premiums on account of said policy together with 6% interest thereon  *  *  *  , but plaintiff refused to receive the same; that  *  *  *  defendant now brings said money into court, etc.

To said special answer there was a reply in general denial and a special reply in which it is alleged that the Commonwealth Insurance Association had full knowledge of the matters averred in each of such answers at the time it issued and delivered said policy, and that appellant also had full knowledge thereof.

There was a trial by jury. Interrogatories were propounded and answers thereto were filed with the general verdict. A motion for judgment on such answers, and a motion for a new trial were each over-

ruled. The ruling on each of these motions is assigned as error and relied on for reversal.

The motion for a new trial contains thirty-two grounds. The correctness of most of the respective rulings presented by said assigned errors, however, depends in the main upon the single question hereinafter indicated.

Appellee, however, contends that, regardless of the manner of the disposition of said question or any other question presented by appellant, there

1. should be an affirmance of the judgment below for the reason that it affirmatively appears from the record that appellant failed to offer and tender a return of the premiums received on said policy for a year and three months after the death of the insured, and after the appellant had knowledge of the alleged misrepresentations and breaches of the provisions of the policy, on which it bases its defense, and that by this unreasonable delay the appellant waived its right to avoid the payment of the policy upon the grounds indicated. In support of its contention, appellee cites: *Mutual Life Ins. Co. v. Finkelstein* (1914), 58 Ind. App. 27, 107 N. E. 557, and cases cited; *American, etc., Ins. Co. v. Rosenstein* (1910), 46 Ind. App. 537, 544; 92 N. E. 380; *Supreme Tribe, etc. v. Lennert* (1912), 178 Ind. 122, 131, 98 N. E. 115.

The legal principle upon which appellee's contention is based is recognized in the cases cited. Indeed, appellant in its answers expressly recognized said principle and avoided its effect by the answers which we have indicated, *supra*. However, the issue thus tendered, while controlled by said principle of law, was nevertheless an issue of fact to be determined by the court or jury which tried the facts, and hence this court could not affirm the case on such issue alone, unless the record is such as to show that the verdict

and judgment were based thereon, or the undisputed evidence is such as to admit of but one inference, viz., that appellant, after it learned, or had sufficient notice to put it upon inquiry concerning, the facts upon which its rescission is based, did not with reasonable promptness rescind and tender, or offer to repay, the premiums received by it on said policy.

Upon this subject the record discloses the following facts: The insured died July 29, 1913. The proof of death was executed in August, 1913. The exact date of its receipt by appellant is not disclosed by the evidence, but was presumably in August, 1913. The complaint was filed June 9, 1914. Appellant appeared and filed an answer on September 15, 1914. A motion for change of venue was made September 26, 1914. An actual tender was made on November 19, 1914, at which time the money was paid in court.

There was an agreement entered of record by the parties, which provides as follows:

"Let it be admitted by both sides, that prior to November 19, 1914, the defendant in this case notified and told the plaintiff that the policy of insurance sued on in this action was void and that said defendant refused to be bound by the same and defendant offered to pay, repay, to plaintiff all money received by the Commonwealth Life Association and by the defendant in this case, from the decedent Steven A. Richardson, and from this plaintiff as premiums on account of said policy of insurance, and that plaintiff refused to accept any such payments and that on this, the 19th day of November, 1914, before the defendant filed its answer to plaintiff's complaint in this case, defendant tendered the plaintiff the sum of $38.60, being the full amount of money received by said Commonwealth Life Association and said defendant from said decedent Richardson, and this plaintiff, on account of such policy of insurance, together with (6%)

six per cent. interest and amount of said money from date of such payment, and that the plaintiff refused such tender on such date.

"Let it be further admitted that the tender having been refused, the defendant paid into court the said sum of $38.60, together with the further sum of $6.50, being the full amount of costs in the case up to that date and filed the receipt of the clerk for said amount as exhibit to its answer."

The parties differ in their interpretation of this agreement and what was intended by it, it being contended by appellee that the only offer to repay premiums ever made by appellant was one made on the day that it paid the money into court, but prior to its paying the same into court. Appellant, on the other hand, contends that the agreement shows that there was a previous tender or its equivalent, in that it shows that prior to November 19, 1914, the day of the actual tender and payment of the money into court, the appellant notified appellee that her policy was void, that it would not be bound by it, *and offered to repay to her the premiums received,* etc., *and that appellee refused to accept them.* Appellant claims also that, by its answers to interrogatories, the jury expressly found against appellee on this issue. The questions and answers upon which this contention is based are as follows: "Interrogatory No. 34.—Did the defendant, upon learning that the said S. A. Richardson was not in good health at the time the policy of insurance herein sued on was issued and delivered to him by the Commonwealth Life Association, notify plaintiff that it would not pay the amount of money mentioned in said policy of insurance, for that reason?

Ans. Yes. After they claim the said S. A. Richardson was not in good health. Interrogatory No. 35—

Did the defendant upon learning that said S. A. Richardson was not in good health, at the time the policy of insurance herein sued on was issued and delivered to him by said Commonwealth Life Association, offer to repay to plaintiff all of the moneys received by this defendant and said Commonwealth Life Association from said S. A. Richardson and from this plaintiff, as premiums on account of said policy of insurance? Ans. Yes (after they claim they learned the said S. A. Richardson was not in good health.) Interrogatory No. 36.—Did the plaintiff refuse to accept the payment of said moneys mentioned in interrogatory No. 35? Ans. Yes. Interrogatory No. 37. —Did the defendant tender to plaintiff the sum of $38.60, as a payment of all premiums with interest received by the defendant and the Commonwealth Life Association on account of the·policy of insurance herein sued on? Ans. Yes. Interrogatory No. 38.— Did the plaintiff refuse to accept the tender of said $38.60, mentioned in the foregoing interrogatory? Ans. Yes. Interrogatory No. 39.—Has the defendant paid into court for the use of plaintiff the sum of $38.60, as a repayment of all moneys received as premiums with interest at six per cent. thereon, on account of said policy of insurance? Interrogatory No. 40.—Has the defendant paid into court for the use of the plaintiff the further sum of $6.50 as costs accrued in this case to date? Ans. Yes.''

For the purposes of the question under consideration, it is not necessary to determine whether said answers show a finding in appellant's favor on said issue. It is sufficient for said purpose to say that they do not show that the verdict of the jury was predicated on said issue, and hence would not warrant an affirmance of the judgment thereon, regardless of errors that may have been of influence in the deter-

mination of the other issues in the case. We also feel that the agreement of the parties, *supra,* is such that the court cannot say that the undisputed evidence on said issue authorizes an affirmance of the judgment regardless of possible errors which may have had influence in the determination of other issues upon which the verdict may have been predicated. We next consider the ruling on the motion for judgment on the answers to interrogatories.

By their answers the jury expressly found as follows (we omit those indicated *supra,* and italicize those specially relied on by appellant) : The deceased made his application for insurance July 15, 1912. The policy was issued by the Commonwealth Life Association of Crawfordsville, Indiana, upon said application July 18, 1912, and was delivered to decedent July 22, 1912. Decedent was in good health at the time of the issuing of said policy, at the time of its delivery, and on July 15, 1912, when he signed said application, and continued to be in good health until the fall of 1912. *The Commonwealth Insurance Association, both at the time of issuing and delivering of said policy, relied on the statements made by Richardson in his said application and at neither of said times knew that any of said statements were false or untrue.* On April 1, 1913, the appellant entered into a contract with said Commonwealth Association to reinsure the risks of said association, and thereafter, viz., on June 21, 1913, issued the certificate of assumption set out and described *supra. The appellant at the time it issued said certificate of assumption did not know or have any notice or information that any of the statements made by Richardson in his said application were false or untrue; nor did it at said time have any knowledge, notice or information that said Richardson was not in good health, either at the*

*time he made his application for insurance, or at the time his policy was issued, or at the time it was delivered. Appellant in issuing said certificate of assumption* relied on the statements *made by said Richardson in his said application, and by reason of such statements was induced to issue said certificate. At the time it issued such certificate the appellant did not know or have any knowledge, notice or information of any kind that any of the statements made by Richardson in his application were false or untrue, and the first notice or information which either appellant or the Commonwealth Life Association had that said Richardson was not in good health at the time said policy was issued and delivered was when the proof of death of said Richardson was received and investigation of the cause of the death made thereafter by the appellant.* The policy of life insurance at one time carried by Richardson in the Modern Woodmen lapsed for nonpayment of premiums on July 1, 1912, and after this date the deceased did not carry any insurance "which was in force" in said Modern Woodmen, and did not carry any insurance obtained by him after said date other than the policy of insurance herein sued on. Decedent, within the thirty days next preceding July 15, 1912, did not consult Dr. E. E. Freeman of Greentown, Indiana, concerning a bodily ailment. from which he was at that time suffering, nor did he consult said doctor "at least twice" concerning a disease of the stomach. from which he was at that time suffering, nor did said Richardson, between the time of making his application and the time of its delivery consult said doctor at least once concerning either a disease of the stomach or a bodily ailment from which he was at that time suffering, nor did decedent ever notify or inform the Commonwealth Life Association that he had between

said dates ever consulted said doctor for a disease of the stomach from which he was then suffering.

We have omitted from this summary the answers to interrogatories Nos. 41, 43 and 47. They are as follows: "Interrogatory No. 41.—Did plaintiff's decedent, the said S. A. Richardson, on the 15th day of July, 1912, carry any life insurance *which was in force on said date?* (Our italics.) Ans. No. Interrogatory No. 43.—Did plaintiff's decedent, the said S. A. Richardson, on the 15th day of July, 1912, carry a policy of life insurance which was in force in the Modern Woodmen for One Thousand Dollars. Ans. No. Interrogatory No. 47.—Did plaintiff's decedent, the said S. A. Richardson, within the last five years next preceding the 15th day of July, 1912, consult any physician for any bodily ailment? Ans. Yes, for dyspepsia."

Appellant's claim that his motion for judgment on said answers should have been sustained is based on the assumption that the declarations and answers of deceased in his policy and application must be treated as warranties. Giving appellant the benefit of this assumption, does it follow that his motion should have been sustained?

The first representation relied on in appellant's answer is that relating to the health of the deceased at the time he applied for and received his policy. The answers to interrogatories indicated *supra* expressly find that it was good on each of said dates and up to the fall following the receipt of his policy. The general verdict is a like finding. So, for the purpose of the question under consideration, this alleged false representation is eliminated.

The second representation indicated *supra,* relied on as being false in appellant's said answer, is that requiring the name and address of any physician

consulted by the deceased in the five years next preceding the date of his application.

2.

It is claimed in effect that the answer "none" to this question in the application is shown to be false by the answer to interrogatory No. 47, *supra,* and that the other finding of the jury, to the effect that neither appellant nor the Commonwealth Association had any knowledge, notice or information that said answer in said application was false until after the proof of death was made, and the further finding that the appellant was induced to issue and deliver the policy on the representations in said application, necessitates a judgment on the answers to interrogatories. This contention, it will be seen, is based on the assumption that the answer to interrogatory No. 47 is the equivalent of a finding that the answer to question No. 11 in the application is false. We cannot agree with this contention. There was in fact no finding by the jury that the answer of deceased to question No. 11, or to any other question in his application was in fact false or untrue. No such interrogatory was put to the jury. Under the issues in this case, appellee was entitled to prove any proper matter in explanation of the answers made by the deceased in his application, and anything tending to show that they were in fact true as explained to and understood by appellant's agent who prepared the application. We know that in this case there was in fact evidence given by appellee showing that when the deceased was asked question No. 9, *supra,* he told appellant's said agent, Dr. Shrock, that he had gotten some medicine from Dr. Freeman the June previous. The doctor replied that that did not amount to anything, and then asked him if he was taking anything at that time and he answered that he was taking baking soda. This explains the statement of Dr.

Shrock in answer to question No. 9, signed "O. L. S."

True, in determining the question under consideration, we cannot look to the evidence, but must confine ourselves to the pleadings, the answers to interrogatories and the general verdict, but we must assume in favor of such verdict that every supposable fact, properly provable under the issues, that would in any way tend to support such verdict, was in fact proved. The issues in this case were such as to make applicable evidence of the character indicated, and its admissibility was proper under the law. (*Iowa Life Ins. Co.* v. *Haughton* [1910], 46 Ind. App. 467, 474, 476, 87 N. E. 702, and cases cited); and hence, without looking to the evidence, we must assume in favor of the general verdict that some such evidence was in fact given in the case.

Assuming, however, without so deciding, that said answers show a breach of said representation or warranty, they would still be insufficient to overcome the general verdict in the absence of further answers showing an election by appellant to rescind its contract of insurance, and an offer to place the insured in *statu quo* within a reasonable time after learning the facts concerning the misrepresentation upon which the forfeiture is claimed. *American etc., Ins. Co.* v. *Rosenstein, supra,* 545, and cases there cited. The most that such answers can be said to show upon the subject of an offer to rescind and tender back the premiums paid is that appellant attempted to make such rescission and tender after it claimed that said Richardson was not in good health, or after it claimed to have learned that he was not in good health. There is no finding as to when the offer to rescind and place in *statu quo* was made with reference to the time when appellant learned of this particular misrepresentation or breach of war-

ranty upon which it predicates its right to a forfeiture. It follows that the answers to interrogatories were not sufficient to authorize a judgment for appellant on account of said breach.

The other representations set up in appellant's third paragraph of answer and alleged to be false are those showing that at the time of his application he was carrying insurance in the Modern Woodmen. The answers to interrogatories Nos. 41 and 43, *supra,* are relied on to show the falsity of said answer of deceased. It will be observed that the questions answered in the application were: *"Do you carry"* life insurance? What companies and amount in each? In each of the interrogatories propounded to the jury it will be observed that the interrogator was not content to limit the question asked to the one which the insurer put to the insured. On the contrary, each of the questions put to the jury involved not merely the question whether deceased carried insurance on the dates involved, but also the question whether the insurance so carried was *"in force"* on said dates. The importance of the additional words must have been recognized by the interrogator, or they would not have been inserted in each interrogatory. There was probably evidence which suggested their importance. We must indulge the assumption before indicated in favor of the general verdict, and assume that there was evidence which showed or tended to show that said answer of the jury to said interrogatory put to it was consistent with the answer made by the deceased to the question in his application. In any event, what we have said *supra* in regard to the necessity of a finding of an offer to rescind and tender back premiums applies with equal force to this alleged breach of warranty.

The answers complained of as being false gave

appellant the name of the company in which he claimed he was carrying insurance, and all the information necessary for it to ascertain whether such answer was false. The knowledge as to the condition of decedent's health was not important or material to the question of its right to rescind because of the alleged untruthful answer relating to the insurance he carried. The answers to interrogatories wholly fail to show that their offer to rescind, and tender premiums, was within a reasonable time after they knew, or by reasonable diligence could have known, the facts concerning the matter of appellant's having insurance in the Modern Woodmen.

For the reasons indicated, we conclude that no error resulted from the overruling of appellant's motion for judgment on the answers to interrogatories, and this is so even though the answers and recitals in decedent's application be treated as warranties. However, the facts which we have indicated are such as furnish strong additional reasons in support of such general conclusion, if in fact the answers and declarations relied on to avoid said policy were representations instead of warranties. This is so because if said answers and declarations can be construed as representations they need be only substantially true, so far as material to the risk, but when construed as warranties, then they cannot be deviated from. *Catholic Order of Foresters* v. *Collins* (1912), 51 Ind. App. 285, 292, 293, 99 N. E. 745, and cases there cited.

As the determination of said question will in its effect dispose of most of the remaining alleged errors relied on by appellant, it will now be considered. It is insisted by appellant, in effect, that when the application is by the terms of the policy made a part of it, so that they become one con-

tract, the law then converts all representations and declarations, whether by way of answers to questions or otherwise, into warranties. In support of this contention, appellant cites: *Phoenix Ins. Co.* v. *Benton* (1882), 87 Ind. 132, 136; *Mutual, etc., Ins. Co.* v. *Miller* (1872), 39 Ind. 475, 484; *Mutual, etc., Ins. Co.* v. *Cannon* (1874), 48 Ind. 264, 269; *Commonwealth's Ins. Co.* v. *Monninger* (1862), 18 Ind. 352, 359; *Presbyterian Mut. Assur. Fund* v. *Allen* (1886), 106 Ind. 593, 594, 595, 7 N. E. 317; *Fidelity Mut. Life Assn.* v. *McDaniel* (1900), 25 Ind. App. 608, 614, 619, 57 N. E. 645.

The reverse of the rule contended for by appellant seems to be generally recognized and supported by authority; that is to say, warranties in an application which are not made part of the policy will be treated as representations. *Commonwealth's Ins. Co.* v. *Monninger, supra; Presbyterian Mut. Assur. Fund* v. *Allen, supra,* and cases cited; 25 Cyc 798 [35], and cases cited.

This is so because the representations in the application in such a case, in a sense, become merged in the policy, rather than a part of it. In such a

8. case the application is a collateral instrument and whatever is contained therein is treated merely as representations which induced the contract into which it has become merged. A warranty is in the nature of a condition precedent, and should be a part and parcel of the contract of insurance conditioned upon it, so as to appear on the face of the policy itself, and hence any merely collateral instrument which was the inducement to, *but no part of,* such contract, even though its words clearly import a warranty of the answers or declarations made therein, will nevertheless be construed as representations

only, and hence if substantially true and not fraudulently made, will not avoid such policy. *Alabama, etc., Ins. Co.* v. *Johnston* (1886), 80 Ala. 467, 2 South. 125, 59 Am. Rep. 816, and cases cited; *Prudential Life Ins. Co.* v. *Sellers* (1913), 54 Ind. App. 326, 333, 102 N. E. 894; *Metropolitan Life Ins. Co.* v. *Johnson* (1911), 49 Ind. App. 233, 246, 94 N. E. 785.

It is apparent that when such an application is made a part of the policy, it and the policy are one contract, and must be construed as such, and hence declarations or answers in the application which appear to be representations only, may be converted by the words of the policy into warranties, where such an intent on the part of the contracting parties is evidenced by the language of the policy, but we can see no good reason why the mere incorporation on an application into the policy, in the absence of language in the policy itself sufficient for such purpose, should convert into warranties answers and declarations in the application which purport to be representations only, and which would be so construed but for the fact that the application is made part of the policy. In such cases the question whether such declaration and answers should be construed as warranties or representations only should be controlled by the intent of the parties, as expressed and ascertainable from their entire contract.

We recognize that there is authority supporting appellant's contention, and that there is language in some of the Indiana cases cited by appellant which seems to do so. It should be observed, however, in this connection, that in each of these cases the policy involved contained language which properly warranted the court in the respective cases in holding that the declarations in the application were warranties, and hence any expression therein to the effect

that the making of the application a part of the policy
converted the representations therein into warran-
ties, regardless of any provision in the policy indi-
cating that they should be so construed, is in the
nature of *dicta*. In any event, the trend and weight
of modern authority, both in our own state and else-
where, in insurance cases, is to treat the answers and
declarations in the application, though it be made a
part of the policy, as representations, unless the lan-
guage of the entire contract clearly shows a different
intent on the part of the contracting parties. *Camp-
bell* v. *New England, etc., Ins. Co.* (1867), 98 Mass.
381; *Price* v. *Phoenix Mut. Life Ins. Co.* (1871), 17
Minn. 497, 10 Am. Rep. 166; *American Life Ins. Co.* v.
*Day* (1876), 39 N. J. Law 89, 23 Am. Rep. 198; *Fitz-
gerald* v. *Supreme Council* (1899), 39 App. Div. 251,
56 N. Y. Supp. 1005; *Alabama, etc., Ins. Co.* v. *Johns-
ton, supra; Brignac* v. *Pacific, etc., Ins. Co.* (1904),
112 La. 574, 36 South. 595, 66 L. R. A. 322; *Moulor* v.
*American Life Ins. Co.* (1883), 111 U. S. 335, 4 Sup.
Ct. 466, 28 L. Ed. 447; 25 Cyc 799, 800; *Catholic Order
of Foresters* v. *Collins, supra; Iowa Life Ins. Co.* v.
*Haughton, supra,* 477.

We submit that in the instant case there is no lan-
guage that can be said to clearly show such intent.
On the contrary, the words used by the parties are
"declare" and "represent." The word "warranty"
does not appear in either the policy or application.
We recognize that the determination of the question
involved is not necessarily controlled by the partic-
ular words of the answer or declaration   (*Moulor* v.
*American Life Ins. Co., supra,* 342, 343; *Alabama, etc.,
Ins. Co.* v. *Johnston, supra.*); but the repeated use of
the one set of words to the exclusion of the other is at
least some evidence of the intent of the parties. There
is no provision or agreement, either in the policy or

application, that such declaration and answer are to be regarded and treated as material to the risk, nor is there any provision of forfeiture of the policy in case such answers and representations should be found in any respect untrue, nor is there any provision that the policy is based on such representations and that in case they should be found to be in any respect untrue, the policy should be null and void. In this respect the instant case is distinguishable from any of the cases cited by appellant.

In our judgment, the language of this policy and the application, when read as an entire contract, indicate that the intent of the contracting parties was to treat the answers and declarations therein as representations only, or at least any intent to treat them as warranties is not clearly indicated by their contract, and hence we are justified, by the weight of modern authority, in treating said answers and declarations as representations only.

What we have said in our discussion of the foregoing questions in effect disposes of those grounds of appellant's motion for new trial which challenge the action of the trial court in overruling a motion made by appellant at the close of appellee's evidence for a peremptory instruction, and repeated at the close of all the evidence. It likewise disposes of those grounds of its motion challenging the action of the court in giving and refusing instructions, in so far as such instructions can be said to involve any statement prejudicial in its effect upon the verdict returned by the jury.

Appellant insists that the verdict is not sustained by sufficient evidence. This claim is predicated on its contention that the evidence shows that the deceased was not in good health when the policy in suit was issued and delivered; that he had

consulted a physician on two or more occasions in the month preceding the delivery of the policy, one of which was between the time he applied for the insurance and the delivery of the policy, and that deceased knew that he was not in good health, and that he had consulted a physician, and hence knew that his answers and declarations in his application were false; that he did not have any insurance in force in the Modern Woodmen when he made his application, and hence knew that his answer that he did have such insurance was false, etc.

A brief statement of the evidence on the questions indicated will, we think, furnish a complete answer to this contention. The evidence showed that deceased died of a cancer of the stomach, a little over a year after he applied for and received the policy of insurance in suit. A physician, Dr. Freeman, testified that deceased had been to see him and had got some medicine for indigestion or dyspepsia probably twice in June and once or twice in July, 1912, and that he continued to get medicine and to receive treatment for the same trouble up into the December following. It also appears from the evidence that deceased was operated on in January of the year following, and it was then ascertained that he had a cancer of the stomach so far developed that the exploring surgeon refused to attempt to remove it. This is in effect the evidence on which appellant bases its contention that deceased was not in good health and that he knew he was not in good health when he made his application and received his policy.

There was evidence tending to impeach the physician who testified that decedent visited him in June or July, 1912, and got medicine of him. This attempted impeachment was by proof of contradictory statements made to appellee. It follows that the jury

might have disregarded his testimony, but if his testimony be given full credit it does not support appellant's claim. On the contrary, it tends to show that deceased's statement that he was in good health was in substantial accord with the truth.

The only ailment testified to by this doctor was indigestion or dyspepsia. Appellant's own doctor, who passed upon the application here involved, testified in effect that dyspepsia was not regarded as a disease, but a symptom only. He also testified in effect that one's good health within the meaning of insurance risks is affected only by a disease or affliction which is acute, or one which affects the general health in the sense that it will in all probability shorten life. As pertinent to this question, see: *Northwestern Mut. Life Ins. Co.* v. *Heimann* (1884), 93 Ind. 24; *Metropolitan Life Ins. Co.* v. *Johnson, supra; Fidelity Mut. Life Assn.* v. *McDaniel, supra,* and cases there cited.

On cross-examination, said Freeman testified in effect that on the occasions when deceased came to him he had no suspicion of a cancer; that cancer was not mentioned; that he never heard of his having a cancer until after the operation. One of the doctors who assisted at the operation testified in effect that he could not tell from the condition and appearance at the time of the operation how long the cancer had been in developing, and could not say whether the deceased was afflicted with it in the previous July. Numerous witnesses testified that appellant filled his appointments as always up until sometime in December, and that they never heard of his having a cancer until after said operation.

Under the evidence, the jury was warranted in finding, as it did, in effect, both in the general verdict and in its answers to interrogatories, that the deceased

did not have a cancer at the time he made his application, and that his health was then good. There was a total lack of evidence showing that deceased at such time had any knowledge of the existence of a cancer. It follows that the jury was entirely justified in finding from the evidence that the declaration of the deceased as to his good health at the time he made his application, if not literally true, was at least substantially so, and that it was not fraudulently made. *Metropolitan Life Ins. Co.* v. *Johnson, supra; Alabama, etc., Ins. Co.* v. *Johnston, supra,* and cases cited.

As to the answers of deceased that he had not consulted any physician in the five years preceding his application, we have indicated the evidence on this subject in our discussion of the answers to interrogatories. In this connection, however, it should be stated that appellant objected to the evidence of appellee relating to the conversation between the deceased and Dr. Shrock, the examining doctor, who wrote down such answer, and this ruling is relied on and urged as error.

This ruling of the trial court is in effect upheld by the case of *Iowa Life Ins. Co.* v. *Haughton, supra.* See cases there cited.

With this evidence in, it clearly appears that said answer of deceased in his application, at least so far as it was material, was substantially true.

As tending to show the falsity of the answer of deceased relating to his having insurance, the appellant offered the testimony of the secretary of the Modern Woodmen, who testified in effect that the records of said order showed that a $1,000 policy, carried by appellant in said order, had lapsed July 1, 1912, because of failure to pay the premium then due, the time limit for such payment having expired the last day of the preceding month, viz.,

June 30, 1912, and that such policy was not in force on July 15, 1912, when deceased made his application containing said answer.

We have already indicated that said answer was a representation only, and hence the jury were perfectly warranted in finding that, so far as material to the risk, such answer was substantially true and not fraudulently made.

Other rulings of the trial court are challenged by appellant, but in so far as they are not disposed of by what we have already said, they are shown by the answers to interrogatories not to have been prejudicial, or otherwise they are of that technical character that affords no ground for reversal under §§407 2221 Burns 1914, §§398, 1891 R. S. 1881.

Most of the questions raised by appellant are practically covered and determined against him in one or the other of the following cases decided by this court, and the cases therein cited: *Fidelity Mut. Life Assn.* v. *McDaniel, supra; Iowa Life Ins. Co.* v. *Haughton, supra; American, etc., Ins. Co.* v. *Rosenstein, supra; Metropolitan Life Ins. Co.* v. *Johnson, supra; Catholic Order of Foresters* v. *Collins, supra; Prudential Life Ins. Co.* v. *Sellers, supra.*

The trial court was evidently controlled in its rulings by said cases, and our examination of the entire record convinces us that appellant has had a fair trial, in accord with the law as declared therein, and that a just result, consistent with the merits of the case, has been reached.

The judgment below is therefore affirmed.

NOTE.—Reported in 118 N. E. 576. Insurance: distinction between warranty and representation, 4 Ann. Cas. 255; knowledge of insurer's agent of falsity of statements in application, effect, 16 L. R. A. 33. See under (6, 7, 9, 10) 25 Cyc 798, 802, 944.